CUMMINGS et ux. v. NIELSON et al.

No. 2393.   Decided December 4, 1912.   On Application for
Rehearing January 29, 1913 (129 Pac. 619).

1. SPECIFIC PERFORMANCE—DEFENSES—ENFORCEMENT INEQUITABLE.
   Specific performance of the option part of an agreement by de-
   fendant to sell fourteen shares of stock to plaintiffs, and also
   to give them an "option" on defendant's interest in an estate or
   "refusal to purchase same at a price as low as any other bona
   fide offer for it," could not be resisted on the ground that the
   agreement was unfair as not limiting the time within which it
   should be exercised, no time limit being necessary under the
   agreement, or that it was unreasonable as entitling plaintiffs to
   purchase at the lowest price any one might offer in good faith,

however inadequate; the contract merely requiring defendant to sell to plaintiffs at the lowest price at which they were willing to sell to others. (Page 165.)

2. CONTRACTS—CONSTRUCTION. In ascertaining the intention of the parties to a contract, all the words must be given their ordinary effect, when considered in the light of the subject-matter and nature of the agreement. (Page 166.)

3. CONTRACTS—CONSTRUCTION—IMPLIED PROVISIONS. That which is implied in a contract is as much a part thereof as its express provisions. (Page 166.)

4. CONTRACTS—CONSTRUCTION—REASONABLE CONSTRUCTION. Courts incline toward giving the language of a contract a reasonable construction, so as to avoid any absurdity, if possible. (Page 167.)

5. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—OPTION CONTRACT. Where an option to purchase land is silent as to the time for exercise of the option, the law implies that it shall be exercised within a reasonable time. (Page 168.)

6. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CERTAINTY. Since equity regards that as certain which may be made certain, a contract giving plaintiffs the option or refusal to purchase defendant's interest in an estate named, at a price as low as any other *bona fide* offer, was not so uncertain as to description, price, and time within which the option must be accepted as to prevent specific performance.[1] (Page 168.)

7. VENDOR AND PURCHASER—OPTION CONTRACTS—ACCEPTANCE. The parties to an option agreement for the sale and purchase of land, by signing and delivering the agreement, thereby accepted its provisions and conditions. (Page 168.)

8. SPECIFIC PERFORMANCE—CONDITIONS PRECEDENT—VENDOR OF LAND. Since, under an agreement by defendants to give plaintiffs the refusal of land at a price as low as any other *bona fide* offer for it, a tender could not have been made until defendants informed plaintiffs that the land was for sale, or that they had an offer, if defendants sold the land without giving plaintiffs the refusal thereof, a tender by plaintiffs was not essential to suing for specific performance; plaintiffs' offer to pay the amount defendants received for the land being sufficient. (Page 169.)

ON APPLICATION FOR REHEARING.

9. CONTRACTS—CONSTRUCTION—INTENTION OF PARTIES. In construing a contract, the court's duty is, if possible, to ascertain and enforce the intention of the parties. (Page 171.)

---

[1] Easton v. Thatcher, 7 Utah, 99, 25 Pac. 728.

10. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—SALE OF LAND. The inadequacy of the legal remedy to enforce a contract for the sale of land is assumed, as a matter of law, making specific performance proper in every case in absence of legal objection. (Page 172.)

11. APPEAL AND ERROR—REHEARING—RIGHT. While an application to the Supreme Court for a rehearing is a matter of right, yet, when it has decided all the material questions involved, a rehearing should not be applied for unless the court has overlooked a material fact, statute, or decision, or acted on an incorrect principle of law, so as to clearly affect the result. (Page 172.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Horace M. Cummings and wife against Christion Nielson and others.

Judgment for defendants. Plaintiffs appeal.

REVERSED AND REMANDED WITH DIRECTIONS TO GRANT NEW TRIAL.

*Moyle & Van Cott* for appellants.

*Geo. B. Hancock* and *Jas. Ingebretsen* for respondents.

### APPELLANTS' POINTS.

It has been held repeatedly by this court that in a motion for a nonsuit, the moving party must, in his motion specify particularly the points relied on for such nonsuit, and thereby call the attention of the court and the opposite party to the points of his objection. (*White v. Rio Grande W. R. Co.*, 22 Utah, 138, 61 Pac. 568; *Smalley v. Rio Grande W. R. Co.*, 34 Utah, 423, 98 Pac. 311.) The language of a contract must be given its usual and ordinary meaning unless clearly employed in a technical sense. (*Daily v. Old*, 35 Utah, 74.) The court in construing a contract will enlarge or restrict the words or clauses which, being

construed literally, would defeat the intention of the parties. (*Daily v. Old, supra.*) And the courts are justified in adopting the interpretation which the parties themselves by their acts, have placed upon their contract. (*Snyder v. Fidelity Sav. Assn.*, 23 Utah, 291.) Where there is an ambiguity in a contract, the practical construction given it by the parties before the controversy arose should be adopted by the court. (*Woodward v. Edmunds*, 20 Utah, 118; *Roberts v. Tuttle*, 36 Utah, 614; *Tilton v. Sterling Coal & Coke Company*, 28 Utah, 173.)

It is evident that the signing of the agreement by the appellants constituted an acceptance of its terms in the most emphatic way possible. The plaintiffs in their complaint offered to pay into court the sum of $3000, the price paid or partly paid to Neilsons under the alleged purchase made by Stillman, and such an offer of payment is sufficient under the authorities. (*Irvine v. Gregory*, 13 Gray [Mass.], 215; *Freeson, et al. v. Bissell*, 63 N. Y. 168-170; *Park v. Johnson*, 4 Allen [Mass.] 259.)

### RESPONDENTS' POINTS.

The offer is uncertain as to description of property, as to price and as to the time within which it may be accepted, and as to all other terms and elements. The authorities appear to be agreed that a contract must be certain as to all of the above mentioned elements before it can be specifically enforced. (Waterman Spec. Performance, Sec. 146; 36 Cyc. 588-595; 11 Ency. Sup. Ct. Dec. 17; *Grizzle v. Gaddis*, 75 Ga. 350; *Whitehill v. Lowe*, 10 Utah, 419; *Schwanebeck v. Smith*, 24 L. R. A. 168; *Berry v. Woodburn*, 40 Pac. 802; *Lawley v. Wade*, 118 Pac. 484; *Edwards v. Rives*, 35 Fla. 89; *Fogg v. Price*, 145 Mass. 513.)

It may not be absolutely necessary to exercise the option and tender the money before bringing suit, and it may be that a party can exercise the option and tender the purchase money for the first time in a complaint for specific performance, but we contend that regardless of the time or place

when and where the option is exercised, the election so to do must be unconditional, and must be accompanied by an unconditional tender of the purchase price. In this case as will be manifest from reading the complaint, there is no unconditional acceptance and no unconditional tender. (11 Ency. Sup. Ct. Dec. pages 20-23; *Kelsey v. Crowther,* 162 U. S. 404; *Litz v. Goosling,* 21 L. R. A. 127.) Furthermore this alleged option even when exercised could not result in a mutual contract. (*Stanton v. Singleton,* 126 Cal. 657; *Cooper v. Pena,* 21 Cal. 404; *Norris v. Fox,* 45 Fed. 406; *Marble v. Ripley,* 10 Wall. 340; *Ducie v. Ford,* 8 Mont. 233; *Balloe v. March,* 133 Pa. St. 64.)

FRICK, C. J.

Appellants brought this action for specific performance of the agreement hereinafter set forth. After hearing appellants' evidence, the district court, upon motion of all the respondents, granted a nonsuit and entered judgment dismissing the action, from which this appeal is prosecuted.

The pleadings are very voluminous; but, in view of the course of the proceedings and the result reached in the district court, we do not deem it necessary to set them forth. Nor is it deemed necessary to refer at length to the evidence adduced at the trial. We shall, however, refer to such parts of the pleadings and evidence, in the course of the opinion, as we may deem necessary to afford a full understanding of the points decided. The material parts of the agreement declared on are as follows:

"Salt Lake City, Utah, October 5, 1907. This agreement, made and entered into between Horace H. Cummings and Barbara M. Cummings, his wife, first part, and Christian Nielson and Sarah E. Nielson, his wife, second part, all of Salt Lake City, Salt Lake County, Utah, witnesseth: That the said second party hereby sells and conveys to the first party all their right, title and interest in the Cummings-Nielson Co. represented by fourteen shares of the capital stock (one share of their original investment having been

42 Utah 11

sold to James Nielson) *and also to give an option on all their or either of their interest in the estate of Julian Moses, deceased, or refusal to purchase the same at a price as low as any other bona fide offer for it or any portion of it,* for the sum of five hundred eighty ($580) cash, the receipt of which is hereby acknowledged, and four hundred thirty ($430) within six months from date hereof. The said second party shall also see that the ten shares of stock which is now held as security of certain payments to be made to Ruth Moses shall be liberated before the said second payment is made. In consideration of the transfer of stock and the fulfilling of the aforesaid covenants and conditions, the first party agrees to make the payments as aforesaid." (Italics ours.)

The agreement was signed by all the parties named therein. It was either admitted by respondents, or proved by appellants at the hearing, that the appellant B. M. Cummings and the respondent Sarah E. Nielson and one Esther B. Swain are sisters and children of the Julian Moses, deceased, named in the agreement aforesaid, and were the sole heirs of his estate, subject, however, to a life estate of one Ruth Ridge Moses, who was the surviving widow of said Julian Moses, deceased, and the mother of said three sisters; that the appellant Horace H. Cummings is the husband of the appellant B. M. Cummings, and the respondent Christian Nielson is the husband of the respondent Sarah E. Nielson; that on the 11th day of July, 1908, the respondents Christian and Sarah E. Nielson sold their interest in the estate of said Julian Moses, deceased, to Forest N. Stillman, and the other respondent was made a party merely as the wife of said Forest N. Stillman; that the Nielsons sold their said interest and conveyed the same by proper deed of conveyance to said Forest N. Stillman for the sum of $3,000; that said sale was made without the knowledge or consent of appellants, and that said Stillman purchased with full knowledge of the agreement aforesaid and of appellants' rights; that appellants always were ready, willing, and able to pay, and, according to their testimony, are "now (at the time

of trial) able, ready, and willing to pay into this court (district court), or to such person as this court may adjudge, the sum of $3,000, or any larger sum that any other *bona fide* purchaser would have paid for this property at the time of the sale to Mr. Stillman on July 11, 1908." The property mentioned in the agreement as the estate of Julian Moses, deceased, was fully identified in the pleadings and by the evidence at the trial.

It was also shown, through correspondence and conversations had between the parties to the contract, after the sale of the interest aforesaid, that all the parties to the agreement fully understood its meaning and general purport, and that the transaction between the Nielsons and Stillman was entered into, not because of the grounds now urged as hereinafter stated, but because the Nielsons insisted that the appellants did not want the property, or had waived their right to the same, or for some similar reason. When appellants had made proof of such matters as were denied and not admitted in the answers, all of the respondents made a motion for a nonsuit upon the following grounds:

"(1.) That the offer or option, as contained in Exhibit A introduced herein as the basis for this action, is unfair, unreasonable, and unconscionable. (2) That the same is uncertain as to description of property, as to price and as to the time within which it may be accepted, and as to all other matters and elements. (3) That any offer contained in said instrument, Exhibit A, has never been accepted by the plaintiffs or either of them, and for the further reason that there has not been a tender to comply with the terms thereof, or to pay any price thereunder. (4) The plaintiffs have not brought themselves within any of the equitable rules entitling them to the specific performance of the contract, if any, here in question."

In granting the motion, the court said:

"The motion will be sustained on the grounds set forth by defendants' attorneys in their motion for nonsuit and dismissal."

It is thus made apparent upon what grounds the court granted the nonsuit. It is manifest that both the rulings and the motion are based entirely upon the language contained in the agreement, and not because of any evidence adduced, or for lack of evidence. We, therefore, need not discuss the evidence.

Taking up respondents' objections in the order stated in the motion for nonsuit, we first inquire, What, if anything, makes the agreement "unfair, unreasonable, and unconscionable," as contended for by counsel? Counsel, in referring to this point in their brief, say:

"Appellants, according to the language used, are entitled to buy the property without any time limit being fixed either for the ascertainment of the price or for the purchase of the property at a price as low as anyone else may in good faith offer for it. The offer is not to sell at the highest price offered in good faith by another person, but in fact the offer is to sell at the lowest price that might be offered in good faith by another person. In other words, if a person in good faith offered to buy the property from the Nielsons for one dollar at any time while the property existed, even though the Nielsons did not care to sell at that price, the appellants would be entitled, under the letter of this option, to come in and buy the property for that sum. This is highly unfair and inequitable."

It is quite apparent that whether counsel's contentions are sound or not hinges upon the meaning to be given to the language of the agreement which we have italicized. Giving the language found in the agreement its ordinary and usual meaning when applied to the subject-matter and nature of the agreement and apparent object or purpose of the parties, as must be done, what was their intention as the same is ascertained from the language found in the agreement? In our judgment it is quite clear that, in addition to the sale of the corporate stock mentioned in the agreement, it also contained an option in favor of appellants in which they were given the right or option to purchase certain interest in certain real estate.

Counsel contend that it appears from the face of the agreement that it is unfair because it contains no limit of time within which the option should be exercised. This objection has no merit, because no time limit was necessary under the terms of the agreement. The option was to become effective only in case the Nielsons desired to sell their interest in the land mentioned in the agreement. If they did not wish to sell, they were not bound to do so; but, if they did intend to sell, then under the agreement they bound themselves for a valuable consideration expressed therein to give the appellants the option, or, as it is expressed in the agreement, "refusal to purchase," the interest mentioned "at a price as low as any other *bona fide* offer for it." If the Nielsons desired to sell, they were thus required to give Mr. and Mrs. Cummings an opportunity to purchase—that is, the refusal to purchase the interest in the lands. This is too plain for cavil, because by the term "refusal to purchase" everybody knows what is meant, although the condition may not be fully expressed. What is meant thereby is that, if the owners of the interest in question desired to sell it, they must communicate that fact to the party holding the option to purchase, and thus give the latter an opportunity to purchase or to refuse to do so. If the latter refuses, he has fully exercised his option. If, however, he then expresses his willingness to purchase, the question of price arises. Counsel urge, and it seems the district court so held, that in this case the price mentioned in the contract is unreasonable because it means the lowest price that any one might offer for the property in good faith, although the amount offered was entirely out of proportion to the actual or market value of the property. This was obviously not the intention of the parties, nor is it necessarily the usual or natural meaning of the language used. While it is true that the language in that regard is not as apt as as it might have been made, yet we think its meaning is reasonably clear and was well understood by all the parties to the agreement. In view that appellants were to have the right of refusing to purchase the property in

case the Nielsons desired to sell, it became their duty to
notify the appellants that they were ready to sell; and,
if they had an offer for the property for which they were
willing to and could sell, it also was their duty to make
such offer known to appellants. If appellants then were
offered the property, if they paid for it the lowest price
for which the Nielsons were willing to sell it to another,
then appellants had the right either to refuse to purchase
it at that price or to purchase it for that price. In no other
way could the right of the refusal to purchase, provided for
in the agreement, be made effective.

In determining the meaning that should be given to lan-
guage used in an agreement in order to ascertain the in-
tention of the parties, all the words or terms used must be
given their ordinary and usual effect, when considered in
the light of the subject-matter and the nature of the agree-
ment. In the agreement before us, no effect could be given
to appellants' right of refusal to purchase, except as indi-
cated above. In this connection we cannot agree with re-
spondents' counsel that if the agreement is thus construed,
something must be read into it which was not in the
minds of the parties. The duty we have imposed up-
on the Nielsons is clearly implied from all the terms
that are used in the agreement. The language used by Mr.
Page, in discussing the rules applicable to the construction
of contracts is applicable here. He says:

"Since a contract is to be construed as a whole, terms which
can be inferred from a consideration of the entire instrument are
as much a part of the contract as if expressly set forth therein."
2 Page on Contracts, sec. 1118.

It is a cardinal rule of construction that that which is
implied is always as much a part of any writing as that
which is expressed. Nor can we agree with counsel that
the term, "at a price as low as any other bona fide
offer for it"—that is, for the property—should be
given the meaning contended for by them, namely,
that any offer, however low, if made in good faith and not

for ulterior purposes, is binding on the Nielsons. Such a construction would, to our minds, not only be wholly unreasonable, but would lead to a clear absurdity.

Courts will always incline towards giving language a reasonable construction, and will avoid if possible, an absurdity if the language is susceptible of some other meaning. In this case the language used is not only susceptible of another meaning, but we think it is manifest that the natural and ordinary meaning of the terms employed, when applied to the subject-matter and nature of the contract, clearly mean what we have construed them to mean, and that such was the manifest intention of the parties. From what was said and done by the parties, as the same is gleaned from the pleadings and the evidence adduced at the hearing, the meaning we have given to the terms used was also the meaning the parties to the contract gave them.

Nor is the contention sound that the agreement is unfair because no time limit was fixed for the "ascertainment of the price" for the sale of the property. Here, again, no time limit was necessary, and no precise price could well have been fixed under the circumstances. The parties, however, provided a method by which the price could be fixed; and, unless and until the Nielsons were ready and willing to sell, it was quite unnecessary to fix a price; and, when they were ready and willing to sell, then all they were required to do was to sell to appellants for as low a price as they were willing to sell the property to anyone else. There is nothing unfair or unjust about such a provision. If the property increased in value after the contract was entered into, the Nielsons would obtain the benefit of the increase; and, if the value or price declined, they were not bound to sell at any price to appellants unless willing to sell to another. All the Nielsons were bound to do under the terms of the contract was to give the appellants a reasonable opportunity to exercise the option to purchase, for which they had paid a valuable consideration.

Nor is the contention sound that the agreement is uncertain because no time is fixed within which appellants were required to exercise their option after the Nielsons apprised them of their willingness to sell for a stated price. In view that the contract is silent as to time, the law supplies the omission by compelling appellants to act within a reasonable time. What would be a reasonable time would ordinarily be a question of fact, under all the circumstances. That question is, however, not involved here, since the Nielsons did not give appellants any opportunity to purchase at any price or at any time.

The second ground for nonsuit is clearly untenable. It is elementary that in equity that is certain which can be made certain. In case a certain farm or certain lands are mentioned by name merely in a contract, without giving a definite description, the farm or lands intended in the contract may always be shown by extrinsic, parol, or documentary evidence. For a concrete application of the doctrine, see *Easton v. Thatcher,* 7 Utah, 99, 25 Pac. 72. The other objection contained in the second ground for nonsuit has already been discussed in connection with counsel's argument we have heretofore set forth.

The objection urged in the third ground for nonsuit, namely, that the offer contained in the agreement "has never been accepted" by appellants, is without merit. In signing and delivering the agreement, all the parties thereto clearly accepted all of its provisions and conditions. All that remained to be done after that was the execution of the agreement in accordance with its terms and conditions. Counsel are in error when they insist that the agreement in this case is a mere offer on the part of the Nielsons, which appellants were required to accept within a reasonable time, and which they have never manifested an intention to accept. The offer of the Nielsons to sell the property upon the conditions named in the agreement was accepted by the appellants when they signed the contract. As the time when the sale should be made, and the price for which the Nielsons were willing to sell, depended upon

the latter's will, it became their duty to apprise appellants of their willingness to sell, and of the price they were willing to sell for and could obtain for the land in question. It was then the duty of appellants either to take the property or to refuse it; and, having done either, they would have exercised their option, and the contract would thus have become mutually binding upon all the parties.

The objection that no tender has been made clearly cannot prevail. Manifestly no tender could either have been made or contemplated until the Nielsons apprised the appellants that the land was for sale and that they had an offer or were willing to take a certain price for it. Under the facts of this case, however, they by their own acts, made a tender unnecessary, if not impossible; and hence they cannot now insist upon one as a condition precedent. The law never requires things that are unnecessary or that have been waived by the parties, either expressly or by clear implication. The offer in the pleadings to pay the amount for which the Nielsons sold the land to Stillman is quite sufficient under the circumstances. Moreover, the fact that the Nielsons were not only willing to sell, but have in fact sold the property in question for a specified sum, which sum appellants alleged and proved they were and are able, ready, and willing to pay, eliminates from this case all question of how the *bona fides* of the offer, or the price for which the Nielsons were bound to sell, was to be ascertained. That question, therefore, is of no further concern.

Finally, the fourth and last ground of objection, namely, that appellants have not "brought themselves within any of the equitable rules entitling them to a specific performance of the contract," is entirely too indefinite to require discussion. In our judgment, the contract in question, when fairly construed, is not vulnerable to the objections urged against it by the respondents. We also are of the opinion that appellants have made out a *prima facie* case and are entitled to a decree of specific performance of the contract, unless some facts are shown which overcome their *prima facie*

case. The district court should therefore proceed to hear the defenses set up by respondents in their answers, and make findings of facts and conclusions of law upon all of the issues presented by the pleadings, and enter a judgment or decree in accordance therewith.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court, with directions to overrule the motion for nonsuit and to grant appellants a new trial, and to proceed with the case in accordance with the views herein expressed. Appellants to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.

ON APPLICATION FOR REHEARING.

FRICK, J.

Two of the respondents, namely, Christian and Sarah E. Nielson, have filed a petition for a rehearing in which they vigorously insist that the conclusion reached by us is erroneous. It is contended that we have erred in holding that the provisions in the contract giving appellants the refusal to purchase the real estate therein named constitutes an option, for the alleged reason that the right conferred upon them by said provisions constituted a mere privilege of pre-emption or pre-emption right. Much time and space is devoted to a discussion of the technical meaning of the privilege of pre-emption and what rights are thereby conferred. It may be perfectly proper for counsel to invoke every technical rule, whether applicable or not, to absolve his client from the contractual obligations assumed by the latter. It is not the duty of a court, however, to yield to counsel's contentions in that regard, and to make a strained effort to find some flaw in a contract whereby a party may escape liability from performing a plain and unequivocal obligation which he voluntarily assumed, and for doing so has received and retains an adequate consideration. The parties to the contract in question manifestly did not have

in mind the technical meaning or effect of a privilege of pre-emption, and did not use the language in their contract with the intent of having it construed with respect to that term. But, assuming that they had done so, the question for us to determine still would be, What did the parties mean and intend by using the language employed when applied to the subject-matter of the contract?

The duty of every court is to give careful scrutiny to the language used by the parties, and in doing so to ascertain therefrom, if possible, the intention of the parties and, when that is ascertained, to enforce such intention, if no legal obstacle is in the way. This is all the courts did, even in the cases cited by counsel, in which the doctrine of the privilege of pre-emption was really involved. That such was done is clearly pointed out in the principal case cited in support of the rehearing, namely, *Garcia v. Callender*, 53 Hun, 12, 5 N. Y. Supp. 934, affirmed under the same title in 125 N. Y. 307, 26 N. E. 283. Both the opinions rendered in that case, the one by the Supreme Court and the other by the Court of Appeals of New York, approve the rules of construction that we applied in the original opinion in determining the meaning of the contract in question. Moreover, those opinions make clear that, even though the privilege of pre-emption were involved here, yet the conclusion we have reached would still be the right one. For statements of when and how the right or privilege of pre-emption is or may be applied, see 6 Words and Phrases, pp. 5496, 5497, and further on in the same volume, pp. 5589, 5590. That our construction of the contract in question is sound is further demonstrated by the Supreme Court of Oklahoma in the case of *Jones v. Moncrief-Cook Co.*, 25 Okl. 856, 108 Pac. 403. It is further insisted that we erred seriously in holding that appellants have made out a *prima facie* case for specific performance. The contract in question is one involving lands.

The equitable rule that governs such contracts is well and tersely stated by the author of Pomeroy's Equity Jurisprudence, in volume 4, sec. 1402, where he says:

"When land, or any estate therein, is the subject-matter of the agreement, the inadequacy of the legal remedy is well settled, and the equitable jurisdiction is firmly established. Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable—when it possesses none of those features which, in ordinary language, influence the discretion of the court—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach."

Where therefore, a contract is clearly established in which one of the parties bound himself to sell, or did sell, specific real property, a *prima facie* right to have such a contract specifically performed arises. If nothing is made to appear which could influence or invoke the discretion of a court of equity to justify its refusal to decree specific performance, a decree requiring the party to perform must follow, as a matter of course, as stated by Mr. Pomeroy. If, therefore, after the case at bar is fully presented to the district court, there arises some legal or equitable reason justifying the court in refusing specific performance, it may enter judgment accordingly. But neither the district court nor this court can in advance of a trial determine the equities in a particular case. What ordinarily are deemed sufficient reasons to invoke or influence the discretion of courts of equity in such cases is discussed by Mr. Pomeroy in the volume before referred to in section 1404, *et seq.* The rule laid down in the original opinion, therefore, is the correct one.

We desire to add a word in conclusion respecting the numerous applications for rehearings in this court. To make an application for a rehearing is a matter of right, and we have no desire to discourage the practice of filing petitions for rehearings in proper cases. When this court, however, has considered and decided all of the material questions involved in a case, a rehearing should not be applied for, unless we have misconstrued or overlooked some material fact or facts, or have overlooked some statute or decision which may affect the result, or that we have based the decision on some wrong principle of law, or have either misapplied or overlooked something which

materially affects the result. In this case nothing was done or attempted by counsel, except to reargue the very propositions we had fully considered and decided. If we should write opinions on all the petitions for rehearings filed, we would have to devote a very large portion of our time in answering counsel's contentions a second time; and, if we should grant rehearings because they are demanded, we should do nothing else save to write and rewrite opinions in a few cases. Let it again be said that it is conceded, as a matter of course, that we cannot convince losing counsel that their contentions should not prevail, but in making this concession let it also be remembered that we, and not counsel, must ultimately assume all responsibility with respect to whether our conclusions are sound or unsound. Our endeavor is to determine all cases correctly upon the law and the facts, and, if we fail in this, it is because we are incapable of arriving at just conclusions. As a general rule, therefore, merely to reargue the grounds originally presented can be of little, if any, aid to us. If there are some reasons, however, such as we have indicated above, or other good reasons, a petition for a rehearing should be promptly filed, and, if it is meritorious, its form will in no case be scrutinized by this court.

There is no merit in the present petition, and it is therefore denied.

McCARTY, C. J., and STRAUP, J., concur.

NOTE.—Justice FRICK'S first term of office expired on the first Monday in January. He was re-elected. Upon his taking office under the re-election, then Justice McCARTY became Chief Justice. This accounts for the first opinion in this case being written by "FRICK, C. J.," and concurred in by "McCARTY, J.," while the opinion on rehearing is written by "FRICK, J.," and concurred in by "McCARTY, C. J."