## MARKS v. MARKS.

No. 6150.   Decided March 5, 1940.   (100 P. 2d 207.)

Rehearing Denied, April 11, 1940.

*E. D. Hatch,* of Salt Lake City, for appellant.

*Charles D. Moore,* of Salt Lake City, for respondent.

WADE, District Judge.

In this case, on March 2, 1934, Plaintiff, Lois Canham Marks, the Respondent here, was granted a divorce from

the Defendant, Louis Lathair Marks, the Appellant here, and was awarded the custody of their son, Robert Marks, together with the home and an allowance for the support of herself and the child. Defendant was ordered to pay certain obligations and to reimburse Plaintiff for certain interest and taxes. Thereafter Plaintiff moved to Los Angeles, where she remarried; whereupon the amount of the allowance was reduced. Defendant has also remarried.

On August 23, 1937, Defendant petitioned the court to modify the decree by giving him part-time custody of the child. To this the Plaintiff answered, and counter-petitioned the court for judgment for $822.04, alleged to have accrued to her under the original decree, and for expenses and attorney's fees and an increase in the allowance for support of the child.

After hearing, on December 12, 1938, the court refused to change the custody of the child, increased the allowance for the child's support, and gave Plaintiff judgment for $490.70, which it found had accrued under the original decree and remained unpaid, and awarded her $80.30 for expenses and $200 attorney's fees.

Defendant appealed, contending that the findings to the effect that $490.70 accruing to Plaintiff under the original decree was unpaid, are contrary to the preponderance of the evidence. He also contends that the court erred in allowing Plaintiff to amend her petition and in awarding the Plaintiff attorney's fees and expenses and in allowing Plaintiff $110 for the months of November and December, 1935.

Plaintiff filed cross assignments of error, contending that the findings to the effect that certain items accruing to her under the original decree had been paid are contrary to the preponderance of the evidence. She also contends that the court erred in holding that she has the burden of proving non-payment of such items, and in this court she asks for an allowance of expenses and counsel fees on this appeal.

At the end of the trial the court allowed Plaintiff to amend her petition to claim certain expenses incurred by her in

traveling from Los Angeles and back twice and one trip for the boy. The court did not err in this regard, the matter being within its discretion.

Did the court err in allowing the Plaintiff these expenses of $80.30 and attorney's fees of $200? The evidence is ample to justify the court's finding that these expenses and fees were reasonable, that they were incurred in a bona fide defense of her rights and prosecution of her ■ claims, and that she was without funds of her own.

But Defendant contends that after the relationship of husband and wife was terminated by the divorce she had no further claim upon him for expenses and attorney's fees than she would have in a suit against a stranger. And it must be conceded that there are authorities to that effect; but this court has repeatedly held to the contrary. See *Hendricks* v. *Hendricks*, 91 Utah 553, rehearing at page 564, 63 P. 2d 277, rehearing 65 P. 2d 642; *Christensen* v. *Christensen*, 65 Utah 597, 239 P. 501; *Tribe* v. *Tribe*, 59 Utah 112, 202 P. 213.

In the case of *Hendricks* v. *Hendricks*, supra, the Defendant petitioned the court to modify the amount allowed for support money, alleging changed conditions, and Plaintiff cited him in for contempt for not paying the amount accruing to her under the original decree. This court held in favor of the Defendant on both issues, but on rehearing, under Section 40-3-3, Revised Statutes for 1933, awarded her expenses and attorney's fees of $100. And in *Tribe* v. *Tribe*, supra [59 Utah 112, 202 P. 216], the court said:

"Where, as here, a decree of divorce is obtained by the mother * * * and the father * * * is required to pay a certain sum periodically * * * and he, without sufficient cause, refuses to comply with the requirements of the decree, and the mother is compelled to bring proceedings against him in court, * * * we can see no good reason why the court, within reasonable bounds, should not require the father to pay counsel fees. * * * If it were held otherwise, the father could compel the mother to fritter away in costs and counsel fees practically the whole of the allowance made for the children by bringing repeated actions to enforce payment of such allowance."

The expenses and attorney's fees are in the same class, and we find no error in the court's decision.

Plaintiff remarried on November 9, 1935, and on the 18th Defendant filed a petition asking the court to reduce the allowance for support from $55 to $15 per month. On December 9, 1935, the parties entered into a stipulation "that the Defendant shall be forever discharged, from the date of said marriage of Plaintiff, from paying alimony to her for her support and maintenance. That the sum payable to the Plaintiff for the use and benefit of the minor child * * * shall be $15.00 per month * * *. Subject to the confirmation of * * * the court." On December 20, 1935, the court ordered, "That the defendant * * * pay to the plaintiff * * * for the support of the minor child * * * $15 per month, commencing on the 1st day of January, 1936 * * *." The court allowed the Plaintiff $110 for the months of November and December, 1935. Defendant contends that under this petition, stipulation and order there accrued only $42 for these two months,—$30 for support of the child, $12 for Plaintiff for the nine days of November,—and that the $68 was excessive; that a mistake crept into the order as drawn by the Defendant's attorney and signed by the court, and therefore that part of the order should be disregarded and the stipulation followed.

In *Myers* v. *Myers,* 62 Utah 90, 218 P. 123, 30 A. L. R. 74, we held that the court does not have the power to revoke or modify an installment of alimony which has accrued prior to the making of the application to modify the decree. The installments for November accrued on the 1st and 16th thereof, prior to the filing of the application to modify the decree; so regardless of the stipulation, the court did not have power to revoke or modify these installments. As to the installments for December the order modifying the decree is not ambiguous as to the date when the modification was to take effect; it is not inconsistent with the stipulation, which expressly provides that the change was subject to the confirmation of the court; and

no appeal from that order was taken, and it is now, therefore, binding upon the trial court and this court, and no error was committed in following it.

Both parties contend that, this being a suit in equity and there being a conflict in the evidence as to whether the items in dispute have been paid, it becomes the duty of this court to review questions of both law and fact. It is the established rule of this court that in such cases we will ■ make an independent examination of the record to determine what the facts are, and even if we find that there is a slight preponderance of the evidence against the findings of the trial court, in cases where the testimony is largely oral, we will not reverse its findings, because the trial judge has seen and heard the witnesses and is better able than we are to judge their credibility. For a comprehensive review of this question, see Justice Wolfe's concurring opinion in *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465. See, also, *Hendricks* v. *Hendricks,* 91 Utah 553, rehearing at page 564, and 63 P. 2d 277, rehearing 65 P. 2d 642.

From an examination of the record we are of the opinion that the court's findings, to the effect that $490.70 accruing to the Plaintiff under the original decree ■ still remains unpaid, is supported by a preponderance of the evidence as to each and every item which goes to make up that sum, and the judgment to that effect is therefore affirmed.

Plaintiff, in her cross-appeal, contends that the findings to the effect that the Defendant had paid certain items is not supported by the evidence. The trial court held that the Plaintiff had the burden of proving, by a preponderance of the evidence, that the sums accruing under the original decree had not been paid and that, she having failed to sustain her burden of proving nonpayment of an item of $12.50 per month from February 16, 1934, to October 31, 1935, or a total of $262.50, the court found that this item had been paid.

It is well settled that payment is an affirmative defense, and that the party claiming payment has the burden of

proving it. *Scott* v. *Austin*, 47 Utah 248, 152 P. 1178; *Filice* v. *Biscardi*, 67 Utah 171, 246 P. 535. See, also, 48 C. J. 680, "Payments," § 176. And as to judgments see 34 C. J. 694, § 1071. This rule should especially apply to cases of this kind, where the debtor can always, and is usually ordered to, make his payments into court, where a record is kept, thereby eliminating any chance for dispute. To this effect is the case of *Openshaw* v. *Openshaw*, 86 Utah 229, 42 P. 2d 191, 193, where, in determining the amount of money which had been paid upon an allowance therefor in a divorce decree, the court said:

"As to the other payments alleged to have been made by him, though they were admitted as having been received, they were so uncertain in amount that to fix their total would be speculative. The burden being upon the defendant to establish the amount paid, he must assume the risk of any failure by reason of indefiniteness. The payments to the children themselves do not appear to have been made as payments upon alimony, but were rather the result of his fatherly interest in the welfare of those children. We do not believe he should be permitted to charge them to plaintiff. By so doing he would be determining for Mrs. Openshaw the manner in which she should expend her allowances."

Thus the court erred in holding that the burden of proving nonpayment was on the Plaintiff. The court did not find that the preponderance of the evidence was in favor of the Defendant on the question of whether this $262.50 had been paid, but found that the evidence was evenly balanced on that question. So we should award the Plaintiff judgment for this amount, except where we find that the preponderance of the evidence shows that payment has been made.

Defendant claims to have paid this $262.50 by small payments in cash to Plaintiff and their child, by furnishing clothing to the child, and by delivering milk tickets, groceries, fruits and vegetables to Plaintiff's apartment over this entire period. But on October 31, 1934, the Plaintiff moved from her apartment to Los Angeles, and there is no evidence that he furnished her any of these things after

that time. Both the Defendant and his mother testified that they delivered these milk tickets and other foods, of a value of $20 per month, during all the time the Plaintiff lived in the apartment in Salt Lake City; that they were purchased by Defendant's father's money and charged by him against the Defendant's account. But no such account was produced. Defendant claims that Plaintiff violently demanded that he pay her in money, and not by delivering these goods, but that he insisted on delivering them, when she was not home, but usually when the boy was home. Plaintiff, and her sister, who lived with her all of the time when she occupied the apartment, positively deny that the Defendant or his mother ever delivered any milk tickets or other food to the apartment after Plaintiff obtained the divorce, but they admit that some deliveries were made before the divorce was granted. We find the preponderance of the evidence on this question is in favor of the Plaintiff, and, under the Openshaw case, supra, it is doubtful whether the Defendant would be entitled to a credit for goods delivered, as he claimed, over her protest.

Defendant claims to have furnished his son with clothing of a value of from $75 to $80 per year, but is very indefinite as to details. His mother claims also to have given the boy clothing at various times, one time in particular amounting to $27 worth. Plaintiff admits that when the boy visited his father he received some shoes, sox, and 15-Cent-Store underwear. This evidence is all very indefinite, and for that reason these items cannot be allowed. They are also not allowable for the reason that they were not made as payment of alimony, but were mere gifts to the boy by his father and grandmother.

Defendant also claims to have paid the Plaintiff many small sums in cash and to have given her some checks and a money order for $15 to the boy. He introduced a check made by his father, L. A. Marks, to Lois Marks, dated May 6, 1934, for the sum of $10, on the back of which was endorsed the words "Lois Marks." He testified that the endorsement is

in Plaintiff's handwriting and that he paid her this check as alimony; but Plaintiff denied ever having seen the check before and denied that the endorsement is in her handwriting, but testified that it is in Defendant's handwriting. After a careful comparison of the writing on that check with the samples of the handwriting of both Plaintiff and Defendant, we are of the opinion that the endorsement is not in Plaintiff's handwriting, and is probably in Defendant's. He also produced a Sender's Receipt for a money order, dated July 27, 1934, with his notation thereon, "Sent to Bob Marks," and testified that he sent it to his son. Plaintiff denies any knowledge thereof. Under the Openshaw case, the money order was merely a gift to his son, and not alimony, and we so hold. Defendant introduced a receipt for $10 alimony, signed by the Plaintiff, which she admits receiving. She also admitted receiving a small check, or payment in cash, of $15, and Defendant is entitled to credit for these two payments on the $262.50,—which leaves a balance owing and unpaid of $237.50, for which Plaintiff is entitled to judgment against the Defendant, in addition to the amount allowed by the court.

In this court Plaintiff filed a motion and affidavit stating that she is without funds to pay her expenses and attorney's fees on this appeal; that Defendant is now earning $425 per month and has more than $75,000 worth of property; that Defendant has threatened to spend his last dollar to prevent her from collecting anything from him,— and asking this court to allow her expenses and attorney's fees on this appeal. Such expenses and attorney's fees were allowed by this court in the following cases: *Cast* v. *Cast*, 1 Utah 128; *Dahlberg* v. *Dahlberg*, 77 Utah 157, 292 P. 214; *Openshaw* v. *Openshaw*, 80 Utah 9, 12 P. 2d 364; *Hendricks* v. *Hendricks*, 91 Utah 564, 65 P. 2d 642.

The Plaintiff is allowed $250 attorney's fee plus her costs incurred on this appeal from which amount should be deducted the sum of $250 heretofore advanced by Defendant on order of this court.

The judgment of the District Court is modified in accordance with the views herein expressed and the cause is remanded with directions to enter judgment and decree awarding Plaintiff an additional sum of $237.50 as alimony together with costs and attorney's fees as herein set forth. Such is the order.

MOFFAT, C. J., and LARSON and PRATT, JJ., concur.

WOLFE, Justice.

I concur, but I think it is possible for the parties to stipulate that money due before the application for reduction may be remitted even though the court may have no power, without agreement by the parties to remit amounts which before application have become liquidated by the terms of the decree. In this respect I rest my concurrence on the proposition that the stipulation was subject to approval by the court and, if modified by the court without protest in that regard by either party, must be considered as acquiesced in by both parties.

The principle laid down in *Tribe* v. *Tribe*, 59 Utah 112, 202 P. 213, and followed in other cases celebrates a triumph of life over logic. As I recollect, in California, and certainly in Oregon and New York, the courts hold that a divorce absolute puts the parties on the same plane as any other litigants as far as suit money and counsel fees are concerned. It would appear that these jurisdictions sacrified logic to the exigencies of the situation. Says Mr. Justice Holmes on page 1 of his book, The Common Law:

"The life of the law has not been logic: it has been experience. The felt necessities of the time * * * have had a good deal more to do than the syllogism in determining the rules by which men should be governed."

McDONOUGH, J., being disqualified, did not participate herein.