333 P.2d 1067

Glen F. NIELSEN and Alta R. Nielsen, his wife, Plaintiffs and Respondents,

v.

W. R. RUCKER and Addie W. Rucker, his wife, Defendants and Appellants.

No. 8817.

Supreme Court of Utah.

Jan. 20, 1959.

George M. Mason, Brigham City, Joseph C. Foley, Ogden, for appellants.

Walter G. Mann, Ida Merrell, Brigham City, for respondents.

WADE, Justice.

Plaintiffs, Mr. and Mrs. Nielsen, respondents here, sued defendants, Mr. and Mrs. Rucker, for specific performance of a contract to exchange the Nielsen Dairy Farm, north of Brigham City, Utah, for the Ruckers' home, fourplex apartment

house, and motel in Tremonton, Utah. The trial court decreed specific performance. The Ruckers appeal, contending that if there was any contract agreed upon, it is too indefinite and uncertain to be enforced by specific performance.

The original contract is awkwardly written on a real estate form entitled "Earnest Money Receipt and Offer to Purchase." Under this contract the agreed purchase price of the respective properties was $95,000, with a mortgage against the Rucker property of about $19,000, and a lien against the Nielsen property of about $29,000. The difference was to be paid in monthly installments. Each party to clear all liens from the personal property given by such party in the exchange. This contract was dated March 14, possession to be transferred April 5, 1957. The sale was arranged by the Real Estate Exchange of Ogden, Utah, and each party agreed to pay a 5% broker's commission on $95,000.

At the time of making this agreement the livestock and equipment of the dairy farm was subject to a chattel mortgage with a balance of $8,454.54 owing. Under its terms the mortgage became due December 1, 1957. The Nielsens were unable immediately to borrow the money to pay this mortgage off. Thereupon, on March 30, 1957, the Ruckers had the real estate agent draw a supplemental agreement, by which they agreed to assume and pay the chattel mortgage, and to take mortgages on the home, motel and fourplex from the Nielsens to repay for such assumption and the differences in the indebtedness against the respective properties. Under this supplemental agreement the Nielsens agreed to pay such mortgages at the rate of $150 per month. The supplemental agreement was duly executed and signed by both parties. Nothing was said in such agreement about when the payment of the chattel mortgage which the Ruckers agreed to assume was due or when the Ruckers would be required to pay it, but there is evidence that they were under the impression that they could pay it off at the rate of $175 per month, and that they did not know until about the 3rd of April, 1957, that this mortgage became due on December 1, 1957. Thereafter each party made preparation to make the exchange, by moving some articles to the other property until the evening of April 5, 1957. But on the morning of April 6, 1957, the Ruckers decided to refuse to make the trade and their attorneys by telegram so informed the real estate agency.

Since then the real estate agency has held conferences with both parties, urging them to complete the deal, and have submitted to each written instruments to be executed in effecting the exchange. The Nielsens have been willing to complete the exchange and have signed the instruments submitted to them to that end by the real estate agency, and have offered to execute

all instruments and to do all acts required by the contract to effect the exchange, and have urged the Ruckers to complete the exchange. On the other hand, the Ruckers have unconditionally refused to consummate the exchange. The Nielsens instituted this action to enforce specific performance. The trial court found the facts in plaintiffs' favor and decreed specific performance and the defendants prosecute this appeal.

The Ruckers contend that the trial court's findings of the facts are not in accordance with the evidence. They urge that since this is an equity case and the appeal is on both law and facts, we should carefully review the evidence. This we have done and conclude that the court's findings of fact are amply supported by the evidence and that there is no basis for us reversing such findings.

Appellants in support of their claim that the contract is too indefinite and uncertain for specific performance make three contentions:

First, they argue that the description in the contract, "The dairy farm owned by Glen Nielsen and wife" does not definitely identify the Nielsen land to be traded. They point to Exhibits "E" and "F" which are instruments drawn by the real estate agency and signed by the Nielsens to consummate the trade. Exhibit "E" purports to assign the Nielsens' ownership in their farm acquired under an escrow agreement between the Nielsens and LuRoy P. Deem and wife. Exhibit "F" purports to convey the dairy farm by warranty deed from the Nielsens to the Ruckers. The descriptions of the farm in both of these instruments contain only three tracts of land with a total of only about 52 acres. However, the trial court decreed that the Nielsens convey to the Ruckers four tracts of land containing in excess of 110 acres.

The evidence shows that the real estate agency in drawing these exhibits by mistake described only three of the four separately described tracts of land which constitute the Nielsen Dairy Farm. No one at the trial claimed that the three tracts included all the land which constituted the dairy farm. The contract Exhibit "A" referred to "The dairy farm with all equipment as per listing cards." The listing card Exhibit "X" uses the following terms: *"Location three miles north of Brigham City * * * Owner Glen Nielsen * * * Occupied by owner * * * Total acres 110 * * * Mortgage⎱Contract⎰ Bal. $29,000 due Nov. payable to William Dean @ $2,000 per year * * *."* (Emphasized words in handwriting, other words printed.)

The evidence without dispute clearly identifies the land described in the decree as the Nielsen farm. It is the only dairy farm which they claim north of Brigham City or

elsewhere. They claimed ownership by reason of a title retaining escrow agreement on which there is a balance owing of about $29,000. This is in accord with the words Mortgage ⎫ Contract ⎭ one above the other with a brace after the two words which indicates that there is a mortgage or contract under which a balance of $29,000 was still owing. Yearly payments of $2,000 became due from 1958 each November. The Nielsens were occupying the dairy farm when the listing card and contract were made. The farm has a total of slightly more than 110 acres. The only incorrect statement in the listing card is to the effect that the payments were to be made to William Dean, whereas the evidence shows that the escrow agreement payments were payable to LuRoy P. Deem and wife. This is obviously a scrivener's error in making the listing card. At the trial plaintiff introduced in evidence the escrow agreement, Exhibit "D," wherein the Deems and the Nielsens delivered in escrow necessary title papers to the Nielsens' property to the Box Elder County Bank to be delivered to the Nielsens upon the payment of the purchase price as therein specified. This agreement contained a description of the Nielsens' dairy farm in accordance with the decree of the court, including four tracts of land and slightly more than 110 acres. From the foregoing facts we think it clear that the property described as the Nielsen Dairy Farm is definitely and fully identified.

In the recent case of Johnson v. Jones, 109 Utah 92, 97, 164 P.2d 893, 895, we quoted with approval from Cummings v. Nielson, 42 Utah 157, 129 P. 619, 622, as follows:

"It is elementary that in equity that is certain which can be made certain. In case * * * certain lands are mentioned by name merely in a contract, without giving a definite description, the * * * lands intended in the contract may always be shown by extrinsic, parol, or documentary evidence."

■ Second, appellants contend that the contract was indefinite and uncertain because Exhibit "F" contains a provision reserving to the Nielsens "grantors of one-half of all mineral and oil rights in said property." But the court did not by its decree recognize such reservation. There is no evidence whatever that the parties agreed on such reservation, either by their contract to trade, Exhibit "A," or orally. Nor do the Nielsens claim any right to such reservation. They, however, admit that they had talked with the real estate agent about making such a reservation. The mere fact that the real estate agency drew papers containing such reservation does not make the contract uncertain.

■ Third, appellants contend that the contract is indefinite and uncertain because they understood that the chattel mortgage

which they agreed to assume could be paid in monthly installments of about $175 per month, when in fact the balance would become due December 1, 1957, and it contained a provision that the mortgagor would not sell or transfer the mortgaged property without the written consent of the mortgagee.

Under the original contract, Exhibit "A," dated March 14, 1957, plaintiffs were to pay the mortgage before the trade was consummated, but failed in their efforts to borrow the necessary funds to make such payments. On March 30, 1957, the defendant W. R. Rucker went to the real estate agency and proposed to assume this mortgage if the Nielsens would agree to give him a first mortgage against the fourplex and home and a second mortgage against the motel, which the Nielsens were to receive in the trade to secure the payment of the difference between the liens on the dairy farm and the home, fourplex and motel. A supplemental agreement to that effect was immediately drawn by Mr. Peterson of the real estate agency and signed by the Ruckers then taken to the Nielsens, who signed it. This is the supplemental agreement Exhibit "B." It contains no provision on when the chattel mortgage indebtedness would become due.

There is no claim that the Nielsens misled the Ruckers on the due date. The Ruckers consulted the bank on or before April 3, 1957, and learned about the due date and the covenant not to transfer the mortgaged property without the written consent of the bank, but made no point of this until the time of the trial. There is no showing that the chattel mortgage cannot be renewed and made payable in accordance with the defendants' understanding; or that the bank would refuse to give its written consent to the transfer of the mortgaged property to the Ruckers. The Ruckers chose to make this supplemental agreement without investigating the terms of the mortgage although the provisions complained of are not unusual for such chattel mortgage. In view of these facts we conclude that the provisions of the contract are not indefinite and uncertain as claimed.

█ One other matter requires consideration. The contract provides:

"We do hereby agree to carry out and fulfill the terms and conditions specified above and, * * *. If either party fails so to do, he agrees to pay all expenses of enforcing this agreement, of any right arising out of the breach thereof, including a reasonable attorneys' fee."

The court awarded to plaintiffs $600 as attorneys' fees. In view of the value of property involved and the responsibility undertaken by counsel and the efforts expended in this case, including several days' trial, this fee strikes us as being unreason-

ably low.[1] In view of the fact that plaintiffs' counsel have been put to further time and effort in defending against this appeal,[2] it is necessary that the case be remanded for the purpose of taking evidence and making a determination as to the total fee to be awarded.

The judgment on the main case is affirmed, with costs to respondents. The judgment on the attorneys' fees is vacated for the purpose of having a full determination made as to the proper attorneys' fees which should be awarded and entered as a part of the judgment.

WORTHEN and McDONOUGH, JJ., concur.

HENRIOD, Justice.

I concur, but with some doubt as to the advisability and wisdom of sending the case back to re-assess attorney's fees. I am not aware of the circumstances surrounding the award, and I have misgivings as to whether the main opinion's rather general appraisal of the service rendered makes it *obvious* that the trial court acted without reason, arbitrarily and capriciously with respect to this aspect of the case, but reasonably with respect to the remainder of its decision, he being the arbiter of the

facts in both instances. In saying so, I do not believe I am being inconsistent with previous pronouncements I may have made favoring additional adequate compensation for the services of attorneys.

CROCKETT, C. J., concurs, and also concurs with the views expressed by HENRIOD, J.

---

1. Mason v. Mason, 108 Utah 428, 160 P. 2d 730; Thatcher v. Industrial Commission, 115 Utah 568, 207 P.2d 178.

2. Marks v. Marks, 98 Utah 400, 100 P. 2d 207.