G.G.A., INC., an Indiana Corporation, Plaintiff and Respondent,

v.

Toula K. LEVENTIS, Defendant and Appellant.

No. 870546–CA.

Court of Appeals of Utah.

April 28, 1989.

Nick J. Colessides, Salt Lake City, for defendant and appellant.

Bryan A. Larson, Salt Lake City, for plaintiff and respondent.

## OPINION

Before DAVIDSON, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

This case involves real property occupied by G.G.A., Inc., doing business as a Wendy's Old Fashioned Hamburgers restaurant, located at about 550 East 400 South in Salt Lake City, Utah. Toula Leventis (Leventis), who leased the property to G.G.A., appeals from the trial court's summary judgment in favor of G.G.A., claiming that her notice to G.G.A. of an offer to purchase the property for $210,000 did not obligate her to sell to G.G.A. for that price. G.G.A., however, contends that Leventis's communication of that offer to G.G.A. created an irrevocable option in its favor. We affirm on the basis that G.G.A. had a right of first refusal for ninety days after notice of the offer.

In 1977, Leventis leased the subject property to G.G.A., which constructed a Wendy's Old Fashioned Hamburgers restaurant on the premises and commenced doing business. The parties' lease provided, in Article XIV entitled Option to Purchase and Right of First Refusal, that after the expiration of the initial twenty-five year term of the lease, G.G.A. would have an option to purchase the property for an agreed upon price or at market value, to be determined by three appraisers. The second paragraph of Article XIV stated that

Landlords further covenant and agree that in case Landlords shall at any time during the term of this lease intend or desire to sell Landlords' estate in the demised premises, or if Landlords shall receive a bona fide offer to purchase said demised premises, Landlords shall first notify Tenant of such desire and intent or of such offer and the price at which and the terms upon which Landlords are willing to sell such estate. Thereupon, Tenant shall have the option, to be exercised within ninety (90) days after receipt by Tenant of written notice from the Landlords to elect to purchase the demised premises ... for such price and upon such stated terms and conditions.

Finally, the lease provided that in the event of litigation due to breach, the successful party would be entitled to reasonable attorney fees and costs.

On September 9, 1986, Leventis received an offer to purchase the premises for $210,000 from Jimmy P. Brown. On September 15, 1986, Leventis notified G.G.A. of the offer and enclosed a copy of Brown's earnest money agreement. In early October, prior to October 28, 1986, Phillip Arlt, on behalf of G.G.A., orally advised Leventis that G.G.A. would exercise its option to purchase the premises for $210,000. On October 28, 1986, Leventis wrote G.G.A. a letter stating that Brown had withdrawn and rescinded the offer. The letter also stated, "I do want to sell my property and will entertain new offer(s) to sell it; accordingly I do not consider myself bound to sell at the price of $210,000."

On November 20, 1986, Leventis received an offer from Janus and Associates to purchase the property for $250,000 and informed G.G.A. of the offer the following day. On December 6, 1986, G.G.A. wrote Leventis a letter offering $210,000 for the property. Leventis refused to sell the property for $210,000. On February 6, 1987, G.G.A. initiated this action against Leventis, alleging that G.G.A. was entitled to specific performance and claiming it was entitled to an injunction to prevent Janus and Associates from purchasing the property. G.G.A. paid Leventis $250,000 for purchase of the property and specifically stated that it reserved its right to purchase the property for $210,000. Closing of the sale and purchase took place on February 27, 1987. The warranty deed stated that Leventis conveyed the property for "ten dollars and other good and valuable consideration." After the property was purchased, G.G.A. amended its complaint against Leventis to include a cause of action for

breach of contract and to enforce the $210,000 purchase price.

Both G.G.A. and Leventis filed motions for summary judgment. The trial court granted summary judgment for G.G.A. and awarded it principal, costs and attorney fees in the amount of $44,792.75. Leventis filed this appeal raising the following issues: 1) Did delivery and acceptance of the warranty deed constitute a merger and thereby extinguish G.G.A.'s rights under the lease? 2) Did Leventis's September 15 letter constitute an irrevocable option or a right of first refusal? 3) Did the trial court err in awarding G.G.A. attorney fees and costs under the lease?

## MERGER

Leventis asserts that her delivery of the warranty deed and G.G.A.'s acceptance constitute merger of the lease into the deed, thus extinguishing G.G.A.'s rights under the lease. As a result, Leventis claims, G.G.A. cannot assert the parties' lease as the basis for this action.

■ The doctrine of merger provides that upon delivery and acceptance of a deed, the provisions of the underlying contract for the conveyance are deemed extinguished or superseded by the deed. *Secor v. Knight*, 716 P.2d 790, 792 (Utah 1986). However, there are several exceptions to this doctrine, including fraud, mistake and the existence of collateral rights in the contract of sale. *Id.* at 793. Under the collateral rights exception, "if the original contract calls for performance by the seller of some act collateral to conveyance of title," his obligations under the original contract are not extinguished. *Stubbs v. Hemmert*, 567 P.2d 168, 169 (Utah 1977). Whether the terms of the contract are collateral depends to a great extent on the intent of the parties. *Id.* The court applied the collateral rights exception in *Stubbs*, and found that the parties had entered into an agreement collateral to the conveyance of the real property, to the effect that the seller of the property could remove certain equipment from the building. After noting that the parties' testimony indicated that they clearly intended to allow plaintiff to re-enter the property and retrieve his equipment after the deed was delivered, the court found that the agreement regarding retrieval of the equipment was collateral to the deed conveying the property.

■ In this case, G.G.A.'s attorney wrote a letter to Leventis's attorney on February 17, 1987, stating that G.G.A. was exercising its option to purchase the property for $250,000. However, the letter also stated that G.G.A. believed that it had timely exercised its option to purchase the property for $210,000. Finally, the letter stated,

You are further notified that GGA hereby specifically reserves all of its rights and remedies under the terms of that certain Real Estate Ground Lease and specifically, but not by way of limitation to, the rights and remedies provided for in Article XIV and further reserves all of its rights and remedies under the September 15, 1986 option and GGA's timely exercise thereof.

On February 27, 1987, G.G.A.'s attorney wrote another letter to Leventis's attorney confirming that Leventis and G.G.A. were reserving all claims, rights and defenses in the lawsuit and nothing in the closing was to be interpreted as waiving those claims and defenses. The letter specifically stated that G.G.A. was not relinquishing its right to purchase the property for $210,000. Leventis did not respond to either letter nor otherwise manifest any intention inconsistent with G.G.A.'s express reservation of rights.

Applying the doctrine of merger and the collateral rights exception to the present case, we find that these letters manifest a clear intent to preserve the rights set forth in the lease, notwithstanding delivery of the deed. In addition, similar to *Stubbs*, the collateral matter of interpretation of the lease was clearly a question to be resolved after closing and delivery of the deed. Therefore, we hold that the lease was an agreement collateral to the conveyance of the real estate, and delivery of the

deed did not extinguish G.G.A.'s rights under the lease.

## OPTION TO PURCHASE OR RIGHT OF FIRST REFUSAL

We now turn to Leventis's claim that the trial court erred in granting summary judgment in favor of G.G.A. Leventis claims that her letter of September 15, 1986, informing G.G.A. that she had received an offer to purchase the property for $210,000 from Jimmy P. Brown, did not create an irrevocable option to purchase the premises. Conversely, G.G.A. contends that Leventis's letter triggered an irrevocable option exercisable within ninety days, to purchase the property for $210,000.

█ In reviewing the trial court's grant of summary judgment, we liberally construe the facts and view the evidence in a light most favorable to the party opposing the motion. *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct.App. 1988). Further, because summary judgment is granted as a matter of law, we are free to reappraise the trial court's legal conclusions. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

█ In interpreting a contract, we determine what the parties intended by examining the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole. *Sears v. Riemersma*, 655 P.2d 1105, 1107–08 (Utah 1982). The cardinal rule is to give effect to the intentions of the parties and, if possible, to glean those intentions from the contract itself. *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). Additionally, a contract should be interpreted so as to harmonize all of its terms and provisions, and all of its terms should be given effect if possible. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

█ The focal point in this case is whether, in light of the underlying lease provision, Leventis's letter effectuated an option or if it created a right of first refusal which was open for ninety days. An option to purchase property is a contract in which the owner of the property sells to the optionee the right to buy the property in accordance with the terms and conditions specified in the option. *Spokane School Dist. No. 81 v. Parzybok*, 96 Wash.2d 95, 633 P.2d 1324, 1325 (1981). A right of first refusal to purchase property is different from an option in that a right of first refusal is not binding unless the offeror decides to sell the property. 11 S. Williston, *Contracts* § 1441A, at 949–50 (3rd ed. 1968); *Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 26 Wash.App. 111, 612 P.2d 422, 425 (1980). A right of first refusal limits the owner's right to dispose of his property by requiring him to first offer it to the party who has the right of first refusal. 11 S. Williston, at 949–50.

Article XIV of the parties' lease, entitled "OPTION TO PURCHASE AND RIGHT OF FIRST REFUSAL," contains two paragraphs. Although the first paragraph is not applicable in this case, interpretation of that paragraph assists our interpretation of paragraph two, which is the pivotal provision in this case. Paragraph one states that at any time during the term of the lease, the tenant has an option to purchase the premises. If the tenant notifies the landlord of its intent to exercise that option, and the parties are unable to agree upon a price, three appraisers will be selected to determine the fair market value of the property. After that value is determined, the tenant has sixty days to elect to purchase the property. In contrast, paragraph two provides that

Landlords further covenant and agree that in case Landlords shall at any time during the term of this lease ... receive a bona fide offer to purchase said demised premises, Landlords shall first notify Tenant of such desire and intent or of such offer and the price at which Landlords are willing to sell such estate. Thereupon, *Tenant shall have the option, to be exercised within ninety (90) days after receipt by Tenant of written notice from the Landlords to elect to purchase the demised premises....* If Tenant exercises said *option* within said ninety (90) day period of time, the closing

of the purchase and sale shall be consummated with reasonable promptness thereafter. If Tenant shall not exercise said option, Landlords shall have the right to conclude a sale ... however ... *the Tenant's option to purchase aforesaid and Tenant's right of first refusal as herein contained* shall remain in force and be binding upon any subsequent owners....

(Emphasis added).

Paragraph one describes an option to purchase the premises and the method for determining the price. The facts of this case indicate, however, that the parties were not operating under the provisions of paragraph one of Article XIV, because the tenant, G.G.A., did not initiate the discussion regarding purchase of the property and the price was set by a third party rather than by the parties or three appraisers.

■ We next examine paragraph two to determine if it sets forth a right of first refusal or an option to purchase and to determine the effect of Leventis's letter concerning Jimmy Brown's offer under paragraph two. Paragraph two requires Leventis to inform G.G.A. of any bona fide offers she receives and the price at which she is willing to sell the property. Thus, if a third party proposes an offer and Leventis accepts that offer, Leventis is obliged to first inform G.G.A. of the offer and permit G.G.A. ninety days within which to agree to purchase the property at the offered and accepted price. Part of the confusion in this case appears to stem from use of the word "option" in paragraph two. However, it appears that the first paragraph of Article XIV grants an option to purchase, while the second paragraph provides a right of first refusal. Therefore, the plain meaning of "option" as used in paragraph two is not the usual technical legal definition, but describes an alternative right to purchase the property upon the offered and accepted terms and conditions of a third party, a right of first refusal. Furthermore, the word "option" has been interpreted in at least one other contract to actually denote a right of first refusal. *See Cummings v. Nielson,* 42 Utah 157,

129 P. 619, 621 (1913). Finally, the last sentence in paragraph two lends further credence to the notion that the first paragraph or "aforesaid" portion of Article XIV describes an option, while the second paragraph of Article XIV "herein" specifies a right of first refusal. Accordingly, paragraph two gives G.G.A. a right of first refusal and limits Leventis's right to dispose of the property in that she is compelled to permit G.G.A. ninety days to exercise its right of first refusal.

Applying paragraph two to the facts of this case, it is clear that Leventis's letter of September 15, 1986 triggered G.G.A.'s right to purchase the property on the same terms as Brown proposed, i.e., for $210,000. Leventis clearly received and accepted an offer from a third party and informed G.G.A. of that offer. In accordance with the lease, G.G.A. then had ninety days to exercise its right of first refusal. On December 6, 1986, G.G.A. timely exercised its right of first refusal. Consequently, the trial court properly granted summary judgement in favor of G.G.A.

## ATTORNEY FEES AND COSTS

■ Leventis also contends that the trial court erred in awarding G.G.A. attorney fees and costs. Attorney fees are generally recoverable in Utah if provided for by contract. *E.g., Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988).

■ The lease in this case provides that if landlord or tenant is required to resort to litigation on account of any breach, the successful party shall recover all costs and expenses including reasonable attorney fees paid or incurred in connection with the litigation. Therefore, because the contract clearly provides that G.G.A. is entitled to recover attorney fees and costs if successful, the court properly awarded attorney fees and costs. *Id.* at 991 ("if reasonable fees are recoverable by contract or statute ... it is a mistake of law to award less than that amount").

G.G.A. is also entitled to attorney fees and costs incurred on appeal, as the contract provision includes both trial and ap-

peal fees and costs. *Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984). We remand to the trial court for a determination of attorney fees incurred on appeal.

Affirmed.

ORME and DAVIDSON, JJ., concur.