339 P.2d 101

William CHRISTENSEN, also known as Bill Christensen, and Celeste Christensen, husband and wife, Plaintiffs and Respondents,

v.

Emeron CHRISTENSEN and Kathleen Christensen, husband and wife, Defendants and Appellants.

No. 8966.

Supreme Court of Utah.

May 14, 1959.

J. Vernon Erickson, Richfield, for appellants.

Gustin, Richards & Mattsson, John T. Vernieu, Richfield, for respondents.

## PER CURIAM.

An appeal from a judgment for specific performance of two alleged parol contracts, one for the sale of 10 acres of farm land and the other for exchange of 22½ shares of water stock.

William and Emeron Christensen are brothers and farmers, whose wives Celeste and Kathleen are also parties to this action.

In 1942 William and Emeron made a verbal contract to exchange land and shares of water stock. At that time William's home was mortgaged to the Federal Land Bank of Berkley. Emeron orally agreed with William, to pay the mortgage, obtain a release thereof and the return of an executed deed to the property, which the plaintiffs had executed to the Bank as security. Defendants also agreed to convey to the plaintiff, Celeste Christensen, a 15-acre tract of farm land, together with 22½ shares of water stock, in consideration of plaintiffs' conveying to defendants 35 acres of farm land and 17½ shares of water stock in another company. Plaintiffs assert that defendants further agreed to convey to them a 2-acre and an 8-acre tract of contiguous farm land for the sum of $1,-000 to be paid for in services and livestock. Plaintiffs took immediate possession of the 10 acres with the knowledge and consent of the defendants. There is evidence that the plaintiffs delivered livestock to Emeron which the latter sold. Emeron denied ever receiving them or that William rendered any services hauling coal and beet pulp on his behalf, amounting in all to $684 to be applied on the purchase price of the said 10 acres, leaving a balance due and owing the defendants in the sum of $316.

Sometime in June, 1942 defendants delivered to plaintiffs the deed to the latters' home which had been held by the bank, defendants having paid off the mortgage. Defendants also delivered a deed to the 15-acre tract and an abstract of title to the 10-acre tract and allegedly assured the plaintiffs that they would complete the transaction by delivering their deed to the 10-acre tract and a certificate for the 22½ shares of water stock. At the same time the plaintiffs delivered their deed to the 35-acre tract and the 17½ shares of water stock to the defendants. During the following two years, on numerous occasions, Emeron assured the plaintiffs that he would have the deed and stock "fixed up" for them, but gave as his excuse for not doing so, lack of time to attend to the matter. In November, 1955 the plaintiffs offered to pay the balance due on the purchase price, but the defendants declined and have never delivered their deed to the 10-acre tract or the water stock, which resulted in this action. The lower court found that the parties had made an oral contract and that

payment for the 10 acres was to be made upon an installment basis without interest in the form of credits against the purchase price for services rendered by the plaintiff, William, together with certain livestock; that the plaintiffs furnished the livestock and services amounting to a reasonable value of $684, leaving a balance of $316; that the plaintiffs offered to pay the balance on numerous occasions, but that defendants have at all times declined to accept the same; that despite the existence of the contract, the defendants now refuse to accept any additional services, livestock or cash from the plaintiffs, and refuse to execute and deliver a proper warranty deed for the 10 acres or a certificate for the water. The water represented by the stock was used by the plaintiffs on the 15 acres conveyed to Celeste from 1942 until 1955 inclusive, during the irrigation season of each of those years. In the Spring of 1956, Emeron instructed the water company to refuse delivery of the water to plaintiffs. The court found that plaintiffs were able, ready and willing to pay the balance of the purchase price.

The defendants contend: (a) that the evidence is insufficient to prove the existence of a contract on either cause of action; (b) that if the contract on the first cause of action did exist, the terms were too uncertain to entitle the plaintiffs to specific performance; (c) that if the contract in the first cause of action did exist it was vulnerable to the statute of frauds; (d) that the second cause of action is barred by the statute of limitations and is within the statute of frauds; (e) and that the court erred in receiving certain letters after the trial from plaintiffs' counsel.

We are of the opinion that the contentions of the defendants cannot be sustained under the evidence and circumstances of this case, and that the judgment of the trial court must be affirmed.

■ Although the testimony of the plaintiffs and that of Emeron Christensen are conflicting on most essentials, yet on conflicting matters the evidence on appeal is to be viewed in a light most favorable to the party for whom the judgment was entered, and when so viewed, if there is sufficient competent evidence supporting the judgment, it will not be disturbed. Staley v. Grant, 2 Utah 2d 421, 276 P.2d 489. We think that the rule applies to this case.

■ There is evidence of ample performance on the part of the plaintiffs to take the oral contract out of the statute of frauds. It was easily possible for the parties to have performed it within a year had they seen fit to do so.[1] That defense, therefore, must fail. Nor do we think that the second cause of action is barred by the statute of limitations. As we view this case

1. 49 Am.Jur. 385, Sec. 25.

the negotiations resulted in a single transaction, and both the first and second causes of action of the plaintiffs are included therein. The statute is not applicable to either cause separately. Either both are barred or neither. The land and water in litigation was used, and the taxes paid, from 1942 until 1955 by the plaintiffs. During the course of some of those years permanent improvements were made upon the land, such as leveling and improving the road thereto. Moreover, the statute has been pleaded as a defense to the second cause of action only, and since all of the transactions of the parties formed a single understanding, it follows that if the first cause is not barred, neither is the second.

The most persuasive argument made by the defendants is their contention that if a contract existed on the plaintiffs' first cause of action, (contract for the sale of the ten acres) the terms thereof were too uncertain to entitle the plaintiffs to specific performance. The only uncertainty is the time of payment of the purchase price. No date was set for payment by the express terms of the contract, and

although in cases of this kind the time of payment necessarily is implied and calls for performance within a reasonable time,[2] under familiar equitable principles[3] we think defendants waived any defense as to uncertainty of time of payment, or protraction thereof beyond what otherwise would have been a reasonable time for payment, by repeatedly accepting the services and livestock which the court, in our opinion, was justified in finding were rendered and delivered under the contract.

We are aware of the rule that "The plaintiff in declaring specific performance of an oral contract must establish the terms thereof with a greater degree of certainty than is required in an action at law, and he must show a clear mutual understanding and a positive agreement of both parties to the terms of the contract."[4] The facts of this case would seem to be inconsistent with any other conclusion than that the parties hereto had a definite understanding with respect to an exchange of real and personal property among themselves such as to invoke the offices of equity in its enforcement, the only matter of in-

2. In Cummings v. Nielson, 42 Utah 157, 129 P. 619, 622, we said: "Nor is the contention sound that the agreement is uncertain because no time is fixed within which appellants were required to exercise their option after the Nielsens apprised them of their willingness to sell for a stated price. In view that the contract is silent as to time, the law supplies the omission by compelling the appel'ants to act within a reasonable time.

What would be a reasonable time would ordinarily be a question of fact under all of the circumstances." 136 A.L.R. 142.
3. 39 Fifth Decennial Digest, Specific Performance, ☞101, p. 2143; Frailey v. McGarry, 1949, 116 Utah 504, 211 P.2d 840.
4. Clark v. Clark, 74 Utah 290, 279 P. 502, 504; Clark v. George, 120 Utah 350, 234 P.2d 844; Pomeroy's Specific Performance of Contracts, 3rd Ed., page 838, Sec. 394.

definiteness being time of performance, which, as already we have said, was cured by a waiver of defense.

As to the fact that the trial court requested some information from both parties after trial and received some from one side, we find nothing in the record to indicate that the defendants were prejudiced or that the inconsequential information influenced anyone, even though the procedure might have been irregular. As to other errors urged, in view of expressions and our conclusions reached, there would seem to be no necessity for documentation here.

The judgment is affirmed, with costs to plaintiffs.