380 P.2d 931

KAMAS STATE BANK, a Utah Corporation, Plaintiff and Respondent,

v.

Joseph F. BOURGEOIS, J. Buys Cummings and Mary Cummings et al., Defendants and Appellants.

No. 9798.

Supreme Court of Utah.

May 1, 1963.

Hatch & Chidester, Heber, for appellants.

Stanley & Smedlay, Heber, for respondent.

WADE, Justice.

This appeal is from a summary judgment in a real property mortgage foreclosure action brought by respondent Kamas State Bank against the mortgagors, Joseph F. and Joan Bourgeois, and J. Buys Cummings and Mary Cummings, the mortgagors' grantees and appellants herein.

The record discloses that the real property involved in this suit had been the home of the parents of J. Buys Cummings, an appellant herein. The parents died intestate, leaving surviving them as their heirs eight sons and daughters. The entire estate consisted of this home, which had been encumbered with a welfare lien of approximately $1,800.00. The heirs agreed to deed this property to Joseph F. and Joan Bourgeois. Joan Bourgeois is a daughter of one of the heirs. It also appears that Joseph and Joan Bourgeois, and Nola and Marion G. Fletcher, parents of Joan, in consideration that J. Buys Cummings and Mary Cummings, his wife, convey their interest in his parents' home to them, entered into an agreement wherein it is stated that the parties contemplate that the property will be turned over to Joseph and Joan Bourgeois, who agree to retire the welfare lien; but if they fail to do so, J. Buys Cummings could pay off any amount due on the lien. And upon doing this and reimbursing the Bourgeois for any amounts they may have paid on the lien and the value of capital

improvements on the property, the Fletchers and the Bourgeois would convey their interest in the property to the J. Buys Cummings. This agreement also contained the provision that: "If, at any time, the said Marion G. Fletcher, Nola Fletcher, Joseph F. Bourgeois and Joan Bourgeois, or any of them determine that they shall sell said premises, before they shall sell them to any other person, they hereby agree to permit the said J. Buys Cummings and Mary Cummings to purchase the same for an amount equal to the principal amounts which they have paid on the above referred to State Welfare lien, together with the value at that time of all permanent capital improvements placed upon said premises. Parties further agree that this right shall constitute a lien against said property for and during the period of the life of J. Buys Cummings but that upon his decease, such rights shall terminate." The agreement further provided that if the Bourgeois paid for the probate of the decedents' estates, that the amount so expended should be included in the repurchase price. J. Buys Cummings and his wife thereupon conveyed their interest and this agreement, and the conveyances to the Bourgeois were duly recorded contemporaneously.

Several months after the deeds and agreement were recorded the Bourgeois obtained a loan of over $5,000 from plaintiff and as security executed the mortgage involved herein. Before the instant suit was commenced the Bourgeois conveyed all their interest in the property by warranty deed to J. Buys Cummings and his wife, Mary. The Cummings thereupon tendered to plaintiff the sum of $4,080, which was the amount the Cummings were obligated to pay the Bourgeois under the terms of their agreement. The plaintiff refused this tender and sued for the amounts due from the Bourgeois under the note, for attorney's fees and for foreclosure of the mortgage.

The court concluded as a matter of law that the agreement to let Cummings purchase the real property in question for the considerations recited therein should the Bourgeois decide to sell during the lifetime of J. Buys Cummings was not a true option, but merely a right of pre-emption or first refusal, and being coupled with the establishment of a fixed price became a promissory restraint and invalid because such restraint was against public policy.[1] It thereupon granted a summary judgment in favor of respondent bank.

In order to sustain the summary judgment, the conditional option to repurchase granted J. Buys Cummings should the grantees decide to sell must be invalid, since

1. See American Law Institute, Restatement, Property, Sec. 413 and Illustration (2) page 2442.

under the pleadings it appears that before it obtained its mortgage the bank had knowledge of said conditional option and that the parties had contracted that such rights under the conditional option should be a lien against the property. If the conditional option is valid, the Cummings' rights upon the exercising of such option would be accorded priority to the rights of respondent bank, whose lien is subsequent to that of appellants.[2]

■■■ Such a conditional option to repurchase in the event the grantee of real property decides to sell is not invalid.[3] As stated in 44 A.L.R.2d Anno., commencing on page 343: "It is clear that the parties to a contract for the sale of land, or to a conveyance of land, may validly provide, in the instrument of contract or conveyance or by contemporaneous writing, that the vendor shall have an option to repurchase the premises * * *." Even should we consider that the type of right accorded the Cummings is but a right of pre-emption as such term is used in the American Law Institute's Restatement, Property, Sec. 413, still such a restraint on the alienation of real property is not invalid per se as being against public policy, but is only invalid if the restraint is unreasonable under the circumstances.[4]

■■■ It appears from the pleadings that the Cummings did not convey their interest in the land until they obtained the promise from the grantees to reconvey the land to them for the considerations mentioned in the event they should decide to sell the property within the lifetime of J. Buys Cummings. There can be no doubt that the restraint on alienation being limited to the lifetime of J. Buys Cummings is not unlimited in duration and therefore does not violate the rule against perpetuities.[5] Therefore, if the conditional option is invalid it must be because it is unreasonable for the grantees of property as part of the consideration for the conveyance to promise to give the grantors the right to repurchase for a stated consideration, in the event the grantees should decide to sell. It does not appear to us that there is any more reason for an option to reconvey to be invalid on the ground that it is against public policy merely because it contains a fixed price where the option depends upon whether the

2. 50 A.L.R. Anno., Options—Intervening Rights, page 1315.

3. 44 A.L.R.2d Anno., page 345, Sec. 2; Anderson v. Riegel, 229 Wis. 200, 281 N.W. 915; Peterson v. Chase, 115 Wis. 239, 91 N.W. 687.

4. American Law Institute Restatement, Property, Sec. 406; Brace v. Black, 51 N.J.Super. 572, 144 A.2d 385.

5. American Law Institute, Restatement, Property, Sec. 394.

grantee desires to sell during the lifetime of a grantor, which is a stated period, than it would be for the same reasons where the option depends upon whether a grantor has the right to exercise the conditional option to repurchase for a fixed price, should he so desire, during his lifetime. We have found no cases which hold that a conditional option by a grantor to repurchase real property for a fixed price which can be exercised during the lifetime of the grantor is invalid as an unreasonable restraint on alienation and is therefore against public policy. In both instances the grantee is equally restrained in alienating the property.

It appearing from the pleadings and record that the grantees Bourgeois conveyed the property in question to the Cummings, and that their rights to repurchase under their conditional option to repurchase was prior to that of respondent Bank, who acquired its mortgage with knowledge of the existence of such contract, it was therefore error for the court to grant a summary judgment in favor of respondent.

Reversed. Costs to appellants.

HENRIOD, C. J., and McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, J., concurs in the result.