385 P.2d 985

Ray V. FISHER and George A. Georgeson, d/b/a F & G Construction Company, a partnership, Plaintiffs and Respondents,

v.

William R. BAILEY and Blanche G. Bailey, Defendants and Appellants.

No. 9801.

Supreme Court of Utah.

Oct. 29, 1963.

Fabian & Clendenin, Bryce E. Roe, Gerald E. Nielson, Salt Lake City, for appellants.

Clarence J. Frost, Salt Lake City, for respondents.

WADE, Justice.

Defendants William R. and Blanche G. Bailey, husband and wife, appeal from a summary judgment ordering specific performance of a contract. By the contract they agree to improve, plat, subdivide and sell to plaintiffs Ray V. Fisher and George A. Georgeson, doing business as F & G Construction Company, respondents here, certain lots southwest of Salt Lake City. After a pre-trial conference, the trial court having heard the statements, admissions, and contentions of the parties, and having received in evidence the sales agreement, a

mortgage, a summons, and a receipt, together with a deposition of each of the Defendants Bailey, on October 1, 1962, made its pre-trial order in favor of the plaintiffs for specific performance of the contract. It required the Baileys to improve and convey the designated lots to the plaintiff Construction Company, and the Company to perform its part of the contract. Also, under the mortgage it awarded $1,000 attorney's fees and costs to the Company. Later, on October 18, 1962, the court entered findings of fact, conclusions of law, and judgment.

Defendants Bailey contend that the sales agreement is void for violation of the rule against perpetuities. They claim it gives the company an option to purchase part of these lots after a life or lives in being and 21 years and the gestation period.[1] We think this doctrine has no application to this case.

The agreement was dated July 2, 1959, and it expressly provides that for $94,550 the Baileys agree to sell to the Company 61 lots at $1,550 per lot, 59 of such lots being described therein and two lots to be later determined. The Company agrees to purchase such lots at the specified price, paying $2,000 cash to apply on the payment for the last two lots to be released by the

1. 5 Powell on Real Property, Sec. 771, p. 611; 4 Restatement of the Law of Property, Sec. 393, pp. 2315–2322; Fratcher "Perpetuities and Other Restraints" (Michigan Legal Studies) p. 399; 41 Am. Jur. Perpetuities and Restraints on Alienation 84–86, Sec. 41; 162 A.L.R. 591 Annotation Option to Purchase, p.p. 581–605.

Baileys, and $800.00 in cash with a note for $750.00 at 6% interest for six months or a year for each lot released. The Baileys agree and guarantee to improve 12 lots within 90 days of the date of the contract, and the balance as required by the Company after January 1, 1960.

The improvements were to consist of water and sewer lines, street improvements as prescribed by Salt Lake County code, and F.H.A., the making of power and gas available and surveying the lots with corner markings. They also agreed to give the Company a mortgage to indemnify the Company for damages if the Baileys defaulted, and to give good title to each lot as payments therefor are made. It was further provided that the number of lots to be released and the time of release should be at the Company's option.

The Baileys further agreed to hold until July 1, 1964, subject exclusively to the order of the Company or its assigns, an additional 21 lots, described in the contract. The price of such lots to be determined at the time of the purchase by the percentage of increase or decrease in the cost of improvements. It also provided that the agreement shall bind the Company's successors and assigns and the heirs, executors, administrators and assigns of the Baileys, and that time is of the essence.

The whole tenor of this contract is for the immediate development, platting and transfer of these lots for the purpose of placing buildings thereon. In the defendants' depositions they each point out that the plaintiff Company urged the immediate closing of the deal in order to furnish employment for its employees. The first 12 lots were to be developed by the Baileys within 90 days and made ready for release to the Company and three of those lots were actually released to the Company within that time. The additional 49 lots which the Company agreed to purchase and the Baileys agreed to sell were to be released at the Company's option after January 1, 1960, which is less than six months after the contract date. A down payment of $2,000 to be applied on the payment for the last two lots was made on the signing of the contract and each lot was to be paid for within one year after such lot was released to the Company. Under the contract the Company agreed to purchase and the Baileys agreed to sell the 61 lots, 59 of which were described and two lots to be later designated, for $1,550 each, or a total of $94,550. Thereafter the contract states that the Baileys agreed to hold to the order of the Company or its assigns 21 additional lots therein described until July 1, 1964, at an increased or decreased price in accordance with any change in the cost of development. Such change in price definitely indicates that the parties intended the development and transfer of the 61 lots shortly after the designated date and before any substantial change in the costs of development, and that

the 21 additional lots to be held until July 1, 1964, being later, would allow for a change in cost of improvements and be the last lots to be transferred.

■ Although the contract does not expressly state that all of the lots must be transferred on or before July 1, 1964, it does definitely so indicate. It not only provides for the development and release of the 61 lots before any mention is made of the additional 21 lots, and provides for a change in the purchase price in case of a change in the cost of development, but it provides for the improvement of 12 lots within 90 days, then 49 lots after six months, and then provides for the holding of the additional 21 lots subject exclusively to the order of the buyer until July 1, 1964, but gave the Company no right to purchase those lots after that time. There was a firm agreement by the buyer to purchase and the seller to sell the 61 lots, only the time for the release of such lots which must be after January 1, 1960, was left to the option of the Company, and the sellers Bailey agreed to hold the additional 21 lots until July 1, 1964, to the order of the Company. All this fits into a pattern that all of the lots were to be transferred on or before the last mentioned date. We conclude that under these circumstances it would be unreasonable to hold that the option to purchase any of these lots could be exercised

any substantial period of time after January 1, 1964,[2] and therefore this contract does not violate the rule against perpetuities. This is apparently in accord with the views of the attorney for the defendants Bailey who represented them in the trial court (different attorneys represent them on the appeal) for we find no claim in the court below that the rule against perpetuities was violated.

We have found no case where an option to purchase has been held to be void for violation of the rule against perpetuities under a contract similar to this one. The only cases so holding, which we have found, are entirely different. They usually authorize the option to purchase in case the owner elects to sell such property "at any time in the future," thus clearly contemplating the possibility of a long period of delay before the option could be exercised.[3]

■ This construction of the contract eliminates the next claim of the appellants Bailey, that the contract is so indefinite, unfair and unduly hard on them that a court of equity will not enforce it. The only specific argument on this point that attempts to point out that either of such claimed defects exists when applied to the provisions of the contract and the facts and circumstances of this case is the claim that the contract would tie this land up indefinitely. This argument has no validity under the construction we have placed on the contract.

---

2. 162 A.L.R. Ann.—Perpetuities—Options to Purchase, 590.

3. Henderson v. Bell, 103 Kan. 422, 173 P. 1124, and authorities cited in note 1.

■ The Baileys both in the trial court and on this appeal claim that the following provision written in longhand in the contract was written for their protection and makes the contract a nullity: "This agreement is contingent upon the second party obtaining title to sufficient property to develop an access road of sixty feet width * * *" (describing the location). The property actually obtained for the road was only 55 feet wide. In their depositions the Baileys testified that, although with the aid of the Company they obtained and developed a 55-foot road which the Company accepted, they have constantly insisted that this change in the width of the road nullified the contract. There is no question that a 55-foot access road has been obtained and developed, and three lots have been sold to the Company in accordance with the contract. This provision was no doubt inserted into the contract at the Baileys' suggestion and it would protect them from liability in case they could not obtain a suitable access road. This does not mean that having obtained only a 55-foot road with the consent of all parties concerned they can now refuse to execute the contract because the road is five feet narrower than specified. The obvious purpose of this provision was to protect them from liability in case they failed to obtain a suitable access road, but not to allow them to avoid a contract on account of other pro-visions or effects which they now would like to change or to correct as a bad bargain. Their obtaining the narrower road with the aid and consent of the Construction Company and selling the first three lots under the contract was a waiver of any rights to nullify the contract, if they had any such right, because the road was five feet narrower than specified.

Judgment affirmed with costs to the Construction Company.

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, Justice (concurring).

I concur and offer these further observations: in a contract of this character where something is to be done in connection with planned future activities, as was the conveyance of these lots, and specification of a definite time is omitted, the law will imply that it is to be done within some such reasonable time as it must sensibly be supposed was contemplated by the parties. What the reasonable time is is to be determined by looking at all of the facts and circumstances. That is what should be done here. The instant situation does not appeal to me as being in any way related to the too-long-delayed vesting of estates in land which the rule against perpetuities is purposed to prevent.